In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-03-00134-CR


______________________________




EDWARD C. ARNDT, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the County Court at Law


Harrison County, Texas


Trial Court No. 2000-0650




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Ross



MEMORANDUM OPINION



 Edward C. Arndt attempts to appeal his conviction for operating a vehicle in a public
place while intoxicated. Arndt was convicted by a jury and sentenced to 180 days in jail
and fined $2,000.00. The issue before us is whether Arndt timely filed his notice of appeal.
We conclude he did not and dismiss the attempted appeal for want of jurisdiction.

 On the issue of whether Arndt timely perfected his appeal, the record establishes:
(1) Arndt's sentence was imposed February 5, 2003; (2) Arndt filed a motion for new trial
March 6, 2003; and (3) Arndt's notice of appeal was not filed until June 18, 2003. 

 A timely notice of appeal is necessary to invoke this Court's jurisdiction. Olivo v.
State, 918 S.W.2d 519, 522 (Tex. Crim. App. 1996). Rule 26.2(a) prescribes the time
period in which a notice of appeal must be filed by a defendant in order to perfect an
appeal in a criminal case. A defendant's notice of appeal is timely if filed within thirty days
after the day sentence is imposed or suspended in open court, or within ninety days after
sentencing if the defendant timely files a motion for new trial. Tex. R. App. P. 26.2(a);
Olivo, 918 S.W.2d at 522. When a defendant appeals from a conviction in a criminal case,
the time to file a notice of appeal runs from the date sentence is imposed, not from the
date sentence is signed and entered by the trial court. Rodarte v. State, 860 S.W.2d 108,
109 (Tex. Crim. App. 1993). The last date allowed for Arndt to timely file his notice of
appeal was May 6, 2003, ninety days after the day the sentence was imposed in open
court. See Tex. R. App. P. 26.2(a)(2). A court of appeals may consider a late notice of
appeal timely to invoke jurisdiction if: (1) it is filed within fifteen days of the last day allowed
for filing; (2) a motion for extension of time is filed in the court of appeals within fifteen days
of the last day allowed for filing the notice of appeal; and (3) the court of appeals grants the
motion for extension of time. Olivo, 918 S.W.2d at 522. 

 Although Arndt filed a motion to extend time to file his notice of appeal, he
erroneously represented to this Court that the deadline to file his notice of appeal was
June 16, 2003. Based on this representation, we granted Arndt's motion. We have now
received the record and have determined that Arndt's motion to extend time to file his
notice of appeal was outside the fifteen-day grace period provided by Tex. R. App. P. 26.3. 
His motion, therefore, was improvidently granted. 

 Arndt's notice of appeal was due May 6, 2003 (or May 21, 2003, with a properly
granted motion to extend time). The notice was not filed until June 18, 2003. He has failed
to perfect his appeal. Accordingly, we dismiss the appeal for want of jurisdiction.





 Donald R. Ross

 Justice


Date Submitted: September 2, 2003

Date Decided: September 3, 2003


Do Not Publish



:LsdException Locked="false" Priority="59" SemiHidden="false"
 UnhideWhenUsed="false" Name="Table Grid"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00081-CR

                                                ______________________________

 

 

                                  KELVIN HUTCHINGS,
JR., Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 188th
Judicial District Court

                                                             Gregg County, Texas

                                                          Trial Court
No. 38754-A

 

                                                        
                                          

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                    Opinion by Chief Justice Morriss








                                                                   O P I N I O N

 

            Just how and
when Longview Police Officer James Seale first directly saw the assault rifle
involved in this case is a matter of dispute. 
In the end, however, Kelvin Hutchings, Jr., was convicted in a bench
trial for being a felon in unlawful possession of the rifle.[1]  See
Tex. Penal Code Ann. § 46.04
(Vernon Supp. 2010).  

            In five points
of error, Hutchings challenges the sufficiency of the evidence, the trial courts
failure to approve a waiver and consent regarding proof of his prior felony
conviction, and the trial courts actions relative to Hutchings motion to
suppress.  We affirm the trial courts
judgment because (1) sufficient evidence supports the judgment, (2) approval
of a waiver and stipulation was not necessary, and (3) allowing police evidence
regarding the firearm was harmless, even if error.

(1)        Sufficient
Evidence Supports the Judgment

 

            Hutchings
challenges the sufficiency of the evidence to prove two elements of the crime.[2]
He claims the evidence is insufficient to prove either that what he possessed
was a firearm, as contemplated by the statute, or that he was a convicted
felon.

            In conducting a legal
sufficiency review, we consider the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Sanders
v. State, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003).  We must give deference to the responsibility
of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence,
and to draw reasonable inferences from basic facts to ultimate facts.  Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson v. Virginia, 443 U.S. 307, 31819
(1979)).  We are not required to
determine whether we believe that the evidence at trial established guilt
beyond a reasonable doubt; rather, when faced with conflicting evidence, we
must presume that the trier of fact resolved any such conflict in favor of the
prosecution, and we must defer to that resolution.  State
v. Turro, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

            The
sufficiency of the evidence is measured by the elements of the offense as
defined by a hypothetically correct jury charge.  Malik v.
State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  To prove unlawful possession of a firearm by a
felon, the State was required to prove that Hutchings (1) possessed a firearm
(2) after conviction and before the fifth anniversary of the persons release
from confinement following conviction of the felony or the persons release
from supervision under community supervision, parole, or mandatory supervision,
whichever date is later.  Tex. Penal Code Ann. § 46.04(a)(1).  [T]o support a conviction for possession of a
firearm, the State must show (1) that the accused exercised actual care,
control, or custody of the firearm, (2) that he was conscious of his connection
with it, and (3) that he possessed the firearm knowingly or intentionally.  Nguyen
v. State, 54 S.W.3d 49, 52 (Tex. App.Texarkana 2001, pet. refd).

                 In a trial before the court, the State presented
three witnesses:  Tamaria Bell, Adrian
Beauchamp, and Seale.  Beauchamp was the
girlfriend of Hutchings brother and lived in the same duplex with Hutchings
and his girlfriend at 100-A Thelma Court in Longview.  The evening of September 23, 2009, Bell had
brought another couple to the duplex with the idea that they might move in with
Hutchings, his brother, and their respective girlfriends.  At trial, Bell and Beauchamp identified
Hutchings and said they saw him with a gun on the night in question.  Bell said the gun had a knife or bayonet
attached.  Both witnesses claimed not to know
much about guns and gave flawed descriptions of the gun, which was not admitted
into evidence at trial.  Shortly after wielding
the rifle, Hutchings left.  Then police
arrived and were directed toward the building where Hutchings lived.  Seale saw an individual with a rifle, silhouetted
in the window.  The silhouetted person,
not Hutchings, exited the home.  Seale
said that, in the house, he found a weapon, which he described as an SKS
with a wood stock and full gripe [sic], it had what appeared to have a thirty
round magazine.  It was loaded with
twenty rounds.  The SKS, with a bayonet
attached, was leaning against a couch.  

            Two
witnesses, Bell and Beauchamp, knew Hutchings and identified him in court.  Both women said they saw Hutchings with a gun.  Bell said Hutchings told her that, if she did
not move her car, he would shoot it up. 
She later saw him pull a big gun out of the trunk of a car.    Hutchings makes much of Bells description
of the weapon.  She initially said the
gun had a musket on the end of it.  For
the sake of context, we provide the relevant section of Bells testimony:

Q         [State]  All right. 
Do you know anything about guns?

 

A         [Witness]  No.

 

Q         Well,
theres nothing wrong with that.  Did it
look like a pistol, like something you would hold in your hand, or a bigger
gun, or -- ?

 

A         It
looked like something that somebody in the army would have.

 

Q         All
right.  And did it have anything attached
to it?

 

A         Is
it called a musket, I believe.  It looks
-- looked like it had a musket on the end of it. 

 

Q         You
mean like a knife?

 

A         Like
a knife, yes.

 

Q         Like
a bayonet?

 

A         Bayonet,
yes.

 

            [Defense
attorney]:  I object to leading, Your
Honor.

 

            THE
COURT:  Dont lead.

 

            [State]:  All right.

 

Q         Could
you see that -- ? [sic]

 

A         Yes.

 

Q         --
when you were sitting in your car?

 

A         Yes,
I could see the whole gun.  

We disagree with Hutchings argument that
the State did nothing to disprove the musket part of Ms. Bells testimony.  Bell said she did not know about guns and
clarified, albeit after leading questions, that she was talking about a gun
with a knife attached, or a bayonet.  Although
Hutchings does not directly argue this, he seems to suggest Bells initial
description could invoke the exception to the statutory definition of firearm
for items that are antiques or curios.[3]  The State is not required to prove a firearm
is not an antique or curio firearm or replica thereof.  Jackson
v. State, 575 S.W.2d 567, 569 (Tex. Crim. App. [Panel Op.] 1978).  If Hutchings wished to present this theory,
it would have been an affirmative defense for him to raise and prove.  See
Cantu v. State, 802 S.W.2d 1, 2 (Tex.
App.San Antonio 1990, pet. refd).  He
did not present this argument to the trial court.  See
generally Tex. R. App. P.
33.1 (preservation of error).

            Bell
also said that she went to a neighbors house to call the police.  Through a window, she watched Hutchings go
into the house, which from the context of her testimony seems to indicate the
duplex he shared with his brother and their girlfriends.  She did not see what happened to the big
gun, but later, when police arrived, she saw them retrieve the weapon from the
house. 

            Beauchamp
testified that, on the night in question, she saw Hutchings holding a gun.  He was outside, near his girlfriends
car.  Beauchamp also said she was not
knowledgeable about guns and so could offer no further description.  She did, though, say she had never seen that
gun in the home shared by the two couples. 


            Seale
responded to a report of an armed subject, and came to 100-A Thelma Court.  While across the street from the duplex, he
saw the silhouette of an individual holding a rifle in the duplexs window.  Seale said he knew it was a rifle, and it
appeared to be an assault rifle.  Seale
and his partner prepared to approach the duplex.  Before they arrived or could knock on the
door, an unarmed male exited, and the officers placed him on the ground.  Seale entered the duplex and saw, leaning
against a couch, an SKS rifle with a bayonet. 
Seales testimony did not identify the male who exited the home or the
two females inside.  The testimony is not
entirely clear, but the context of Seales testimony suggests the residence in
question was 100-A Thelma Court, where Hutchings and his brother lived with
their girlfriends.  Exactly when Seale
saw the rifle, and whether he was in the doorway of the home or had entered the
home, is disputed by Hutchings and we will address it when taking up his
complaint about the trial courts denial of the motion to suppress.

            It
is true that neither Bell nor Beauchamp were shown a gun or picture of a gun to
identify whether it was similar to, or the same as, the one they had seen
Hutchings wield.  But Bell did say that,
as she spoke to police on their arrival, she saw, in a window, a person with a
gun.  She appears to be referring to the
apartment or duplex where Hutchings lived. 
And when asked, she testified that she saw the police recover the gun.


            Hutchings
claims there was no evidence the gun which Bell and Beauchamp saw Hutchings
holding was operational.  Seale testified
he and the other officers on the scene had difficulty removing the magazine
from the rifle.  It is not necessary for
the State to prove a firearm is operable. 
Wright v. State, 582 S.W.2d
845, 847 (Tex. Crim. App. [Panel Op.] 1979) (in proving use or exhibition of
deadly weapon, where alleged deadly weapon is firearm, State need not prove
firearm operational); Walker v. State,
543 S.W.2d 634, 637 (Tex. Crim. App. 1976) (.45 automatic pistol is firearm,
even if clip and firing pin missing); Lewis
v. State, 852 S.W.2d 667, 669 (Tex. App.Houston [14th Dist.] 1993, no
pet.) (in prosecution for unlawful possession of firearm, not necessary for
State to prove weapon operational).

            The
evidence was sufficient to support a finding Hutchings possessed a firearm.

            Hutchings
also argues the evidence was insufficient to prove he was a convicted felon at
the time.[4]  But, a certified copy of the judgment of
Hutchings prior felony was tendered and admitted into evidence without
objection.  And Hutchings admitted in
open court that the prior conviction was his. 
The prior judgment, admitted into evidence, shows its date and the
sentence from that conviction.  Thus, the
record contains sufficient information to establish this part of the States
case against Hutchings.

 

 

 

 

(2)        Approval of a Waiver and Stipulation Was
Not Necessary

 

            Before
testimony began, the State and Hutchings told the trial court they had arranged
to stipulate to Hutchings prior felony conviction.  Hutchings personally, after being asked by
the trial court, acknowledged his prior felony conviction.  The court then stated that it approve[d] the
stipulation.  The State then offered
Exhibit 1, a certified copy of a judgment convicting Hutchings of burglary of a
habitation in May 2002.  Hutchings,
through his attorney, stated, [W]e have stipulated to it and we have no
objection to it.  The judgment was
received into evidence.

            Hutchings
complains, in his third point of error, that the trial court failed to comply
with Article 1.15 of the Texas Code of Criminal Procedure in approving what is
characterized as Hutchings stipulation of evidence regarding his prior felony
conviction.  Article 1.15 requires, among
other things, that if a defendant waives a jury trial, the State must still
present evidence supporting a finding of guilt; adding that the evidence may be
stipulated.  Tex. Code Crim. Proc. Ann. art. 1.15.  If stipulated testimony is to be relied on,
though, the defendant must waive his or her right to confront and cross-examine
the witness or witnesses whose testimony is to be stipulated, as well as
stipulate to the testimony or written statements of witnesses.  Id.  In such a case, the waiver of confrontation
and examination of witnesses and consent to stipulate to evidence must be
approved by the trial court in writing and filed in the papers of the
cause.  Id.  Hutchings complains that
the record does not contain a written approval by the trial court of Hutchings
waiver and consent as required by Article 1.15 of the Texas Code of Criminal
Procedure.  He is correct that there is
no such action by the trial court, but he is incorrect in claiming it is
required in this case.

            Hutchings
signed a document acknowledging his waiver of a jury trial.  The document is a form fully titled Waiver
of Jury Trial and Consent to Stipulation of Testimony.  The form, in its original state, contains
statements indicating the signer waives a jury trial; waives the right for the
defendants attorney to have ten days preparation for trial; waives reading of
the indictment; stipulates to evidence in the case; and waives the appearance,
confrontation, and cross-examination of witnesses.  In this particular document, all of the
statements except that waiving a trial by jury are struck through and
initialed.  The document, so amended,
bears the signature of Hutchings, his attorney, the prosecutor, and the trial
court.

            Hutchings
claims error because the trial court failed to approve, in writing, Hutchings
waiver and consent, as required by Article 1.15.  If Hutchings were correct, this would, by
itself, be reversible error.  See Messer
v. State, 729 S.W.2d 694, 698 (Tex. Crim. App. 1986).  In this situation, however, compliance with Article
1.15 was not required, since no stipulated testimony was admitted or relied on.  After the parties discussed the stipulation,
the State tendered into evidence the certified copy of that judgment,
reflecting Hutchings conviction for burglary of a habitation May 15, 2002.[5]  Hutchings stated he had no objection to
admission of the judgment, and the trial court accepted it into evidence.  The trial court further asked Hutchings if
that conviction was his, to which Hutchings answered affirmatively.  Here, the requisites of Article 1.15 are immaterial
because evidence was properly admitted that established the felony part of
the States burden here.

            In
support of his argument, Hutchings relies on Lopez v. State, 708 S.W.2d 446 (Tex. Crim. App. 1986).  The trial court overruled Lopezs motion to
suppress; at that hearing, the only evidence offered was from a police officer
describing the circumstances of Lopezs arrest. 
After the suppression was denied, Lopez waived a jury trial and the case
was heard by the court.  The parties
agreed the only evidence would be that from the suppression hearing, and a
stipulation of evidence which stated that, if the State were to call a chemist
to testify, the chemist would present evidence that the substance with which
Lopez was charged with possessing was heroin. 
Id. at 448.  The stipulation of evidence was signed by the
defendant, his attorney, and the prosecutor, but not the trial court.  The Texas Court of Criminal Appeals found Article
1.15 had not been complied with and reversed Lopezs conviction.  Id.
at 449.[6]

            Hutchings
case bears a significant distinction from Lopez.  In Lopez,
the faulty stipulated testimony was the only proof of a crucial piece of
evidence.  Here, evidence establishing
the crucial element, Hutchings status as a felon was admitted without
objection, independent of any stipulated testimony.  We overrule Hutchings third point of error.

 

 

(3)        Allowing Police Evidence Regarding the
Firearm Was Harmless, Even If Error

 

            In
his fourth and fifth points, argued together, Hutchings complains of the trial
courts overruling his motion to suppress evidence, then noting on the docket
sheet, Even if granted  Evid beyond Reasonable Doubt.  The motion to suppress was decided after
presentation of the States witnesses.

            Hutchings
motion to suppress sought to suppress any firearm obtained by Longview police
and any testimony from the police about the firearm.  No weapon was offered into evidence by the
State, and hence no error can be shown as to the failure to suppress the weapon
itself.  Stiggers v. State, 506 S.W.2d 609, 611 (Tex. Crim. App. 1974).

            Seale
provided testimony about the rifle gathered from two different sources.  On one hand, he testified that, while
standing across the street from the duplex, he saw, silhouetted in a window of
the duplex, an individual holding an assault rifle.  On the other hand, he also testified about
the rifle he found inside the duplex, just before he entered, just after he
entered, or as he entered the duplex. 
Seales testimony about the silhouetted man holding the assault rifle
was clearly admissible.  It is his
testimony describing the gun inside the duplex that is the real issue here.

            We
reserve any discussion about what the trial court could have concluded
regarding exactly where Seale was standing when he first saw the rifle in
plain view inside the duplex, or what it could have concluded regarding the
officers justification for entry into the duplex.  The reason we need not address those matters
is that the evidence is tangential; Seales testimony does not place a rifle in
Hutchings hands.  Therefore, even if it
was error to admit Seales testimony about finding the gun inside the duplex,
any such error was harmless.

            We
also find no error in the trial courts entry on its docket sheet stating that it
had overruled the suppression motion, but Even if granted  Evid beyond
Reasonable Doubt.  That is absolutely
consistent with our view that the evidence in question was tangential and of
much lesser importance than the direct evidence from Bell and Beauchamp placing
the rifle in Hutchings hands.  We
overrule Hutchings fourth and fifth points of error.

            We
affirm the judgment of the trial court.

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          December
20, 2010

Date Decided:             January
7, 2011

 

Publish

 











[1]Hutchings
was also tried for aggravated assault, but the trial court acquitted Hutchings
of that charge.  For his conviction,
Hutchings was sentenced to confinement for nine years and one month.

 





[2]In
points of error one and two, Hutchings claims the evidence is legally and
factually, respectively, insufficient to support the trial courts
judgment.  We no longer review for
factual sufficiency.  See Brooks v. State, 323 S.W.3d
893, 89495, 902 (Tex. Crim. App. 2010) (4-1-4 decision) (where plurality and
Judge Womack agreed that Jackson v. Virginia legal-sufficiency standard
is only standard reviewing court should apply in determining whether evidence
is sufficient to support each element of criminal offense).





[3]Firearm
does not include a firearm that may have, as an integral part, a folding knife
blade or other characteristics of weapons made illegal by this chapter and that
is:

 
             (A) an antique or
curio firearm manufactured before 1899; or

 
             (B) a replica of an
antique or curio firearm manufactured before 1899, but only if the replica does
not use rim fire or center fire ammunition. 


 

Tex.
Penal Code Ann. § 46.01(3)
(Vernon Supp. 2010).





[4]Hutchings
argument asserts that the trial court did not approve a stipulation between the
parties as required by Article 1.15 of the Texas Code of Criminal
Procedure.  Tex. Code Crim. Proc.
Ann. art. 1.15 (Vernon 2005).  We address that argument below.





[5]That
judgment sentenced Hutchings to nine years in the Texas Department of Criminal
JusticeInstitutional Division.  Although
Hutchings does not dispute this point, a sentence of nine years pronounced in
May 2002 places the instant offense date, September 23, 2009, within the
five-year span proscribed in Section 46.04(a) of the Texas Penal Code.  Tex.
Penal Code Ann. § 46.04(a).





[6]The
court in Lopez found the error
fundamental and remanded the cause to the trial court.  Later, the Texas Court of Criminal Appeals
found this type of error to be trial error, as opposed to fundamental error,
and therefore did not preclude a retrial. 
Messer, 729 S.W.2d at
698.